# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

**APRIL STARK**

      **Plaintiff,**

**v.**                                     **Case No. 1:21-cv-00495-JCH-SCY**

**ALLSTATE FIRE AND**
**CASUALTY INSURANCE COMPANY**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

A car crash with an underinsured motorist injured Plaintiff April Stark. Defendant Allstate Fire and Casualty Insurance Company insured Ms. Stark against bodily injury. But Ms. Stark found that Allstate underpaid her after the crash, so she sued Allstate. Both parties moved for summary judgment. *See Allstate's Motion for Summary Judgment and Memorandum in Support Thereof* (ECF No. 15); *Motion for Summary Judgment* (ECF No. 16); *Memorandum in Support of Motion for Summary Judgment* (ECF No. 17).

Allstate underpaid Ms. Stark if she had stacked insurance coverage at the time of the crash. Because Allstate did not adhere strictly to New Mexico's requirements for obtaining a rejection of stacked coverage, Ms. Stark had stacked coverage. The Court thus grants in part Ms. Stark's motion for summary judgment.

## I.    Background

### A.    The Insurance Policy

The parties agree on the facts. Anna Tafoya, Ms. Stark's mother, had an Allstate insurance policy prior to May 2020. The policy covered multiple vehicles; each vehicle carried a per-person

limit of $30,000 in bodily injury coverage. The coverage was non-stacked.[1] *See* ECF No. 15, at 2, ¶¶ 3-4; Def.'s Ex. 1, at 2, ¶ 8 (ECF No. 15-1, at 2); Pff.'s Resp. 1, ¶¶ 3-4 (ECF No. 18).

In May 2020, Ms. Tafoya ordered a new policy from Allstate. Ms. Tafoya sought to insure three vehicles at the same coverage levels as her previous policy. Allstate issued a policy with a stated effective date of May 19, 2020. The policy's supplement noted that Ms. Tafoya selected non-stacked coverage. Despite this statement, Allstate still instructed Ms. Tafoya to return an uninsured/underinsured motorist ("UM/UIM")[2] selection form with her previous coverage selections. In particular, if Ms. Tafoya wanted her coverage to be non-stacked, then Ms. Tafoya needed to affirmatively select non-stacked coverage. If Ms. Tafoya did not return the form within thirty days, Allstate said, then the policy would include stacked coverage. *See* ECF No. 15, at 2-3, ¶¶ 5-8; Def.'s Ex. 1, at 2, ¶¶ 10-13 (ECF No. 15-1, at 2); ECF No. 18, at 2, ¶¶ 5-8; *see also* Def.'s Ex. 1-B, at 7 (ECF No. 15-1, at 20) (policy that Allstate claims was effective on May 19, 2020, indicating non-stacked coverage).

Ms. Tafoya did not return the selection form by June 18, 2020. So Allstate sent Ms. Tafoya new policy declarations. This policy's supplement stated that Ms. Tafoya selected stacked coverage and that the supplement formed a part of the declarations. The stacked coverage increased

---

[1] Here, when an "injured person is a multiple vehicle owner and each vehicle is insured separately in a single policy," stacking means "combining or aggregating the limits of the coverages applicable to each vehicle." 2 William J. Schermer & Irvin E. Schermer, *Automobile Liability Insurance* § 29:1, Westlaw (database updated Oct. 2022). For example, consider a policy that covers three cars, where each car has a per-person limit of $30,000 for bodily injuries caused by uninsured motorists, and where the coverage is stacked. If an insured party suffers $90,000 in bodily injuries in a crash with an uninsured motorist, then the insured party could "stack" the three cars' limits to receive $90,000 in coverage. But if this policy were non-stacked, then the insured party would receive only $30,000 in coverage—that is, the limit for a single car.
[2] Any distinction between uninsured and underinsured motorist coverage does not affect the Court's decision. For that reason, the Court does not alter quotations that use only "UM" or "uninsured motorist."

Ms. Tafoya's premiums. *See* ECF No. 15, at 3, ¶¶ 9-10; Def.'s Ex. 1, at 3, ¶¶ 14-15 (ECF No. 15-1, at 3); ECF No. 18, at 2, ¶¶ 9-10; *see also* Def.'s Ex. 1-C, at 7 (ECF No. 15-1, at 29) (policy that Allstate claims was effective on June 18, 2020, indicating stacked coverage).

On August 5, 2020, Ms. Tafoya contacted Allstate to ask about the premium increase. An Allstate agent explained that the policy included stacked coverage because Ms. Tafoya did not return the selection form. Ms. Tafoya orally requested non-stacked coverage. *See* ECF No. 15, at 3, ¶ 11; Def.'s Ex. 1, at 3, ¶¶ 16-17 (ECF No. 15-1, at 3); ECF No. 18, at 2, ¶ 11; Def.'s Reply 2 (ECF No. 19).

Allstate processed Ms. Tafoya's oral rejection of stacked coverage that same day. Allstate provided Ms. Tafoya with a policy for non-stacked coverage. Allstate made the coverage retroactive: the policy's stated effective date was July 6, 2020. And like the policy declarations from May, this policy's supplement stated that Ms. Tafoya selected non-stacked coverage and that the supplement formed a part of the policy declarations. Once again, however, Allstate instructed Ms. Tafoya to choose non-stacked coverage by signing and returning a UM/UIM selection form. The form itself warned, "Please note that if you fail to properly complete and return this document, you will be deemed to have selected Uninsured Motorists Insurance for Bodily Injury at limits equal to your Bodily Injury Liability limits and *those limits will be stacked*." Def.'s Ex. 1-E, at 1 (ECF No. 15-1, at 31) (emphasis added) (selection form); *see* ECF No. 15, at 3-4, ¶¶ 12-15; Def.'s Ex. 1, at 3, ¶¶ 17-18 (ECF No. 15-1, at 3); ECF No. 18, at 2-3, ¶¶ 12-15; *see also* Def.'s Ex. A, at 7 (ECF No. 21-1, at 12) (policy that Allstate claims was effective on August 5, 2020, and retroactively effective on July 6, 2020, indicating non-stacked coverage).

On August 10, 2020, Ms. Tafoya signed and returned the selection form. The form showed Ms. Tafoya's written selection of non-stacked coverage. And the form stated that "the rejection,

selection or modification of uninsured motorists insurance is a part of your policy and will be reflected on the policy declarations." Def.'s Ex. 1-E, at 5 (ECF No. 15-1, at 35); *see* ECF No. 15, at 3, 6, ¶¶ 12, 18; Def.'s Ex. 1, at 3, ¶ 19 (ECF No. 15-1, at 3); ECF No. 18, at 2, 4, ¶¶ 12, 18.

On September 14, 2020, Allstate sent Ms. Tafoya her policy declarations. This policy reiterated that coverage was non-stacked. *See* ECF No. 17, at 4, ¶ 10; Def.'s Resp. 4, ¶ 10 (ECF No. 21); *see also* Compl. Ex. D, at 5-6 (ECF No. 1-1, at 72-73) (policy declarations sent September 14, 2020).

### B.     The Accident and Subsequent Events

On August 28, 2020—after Ms. Tafoya returned the selection form but before Allstate sent the September policy declarations—Ms. Stark was in a car crash with an underinsured motorist. Ms. Stark was driving one of the vehicles insured on Ms. Tafoya's policy. And because Ms. Stark resided with Ms. Tafoya, the policy covered Ms. Stark's injuries. ECF No. 17, at 5-7.[3]

Ms. Stark suffered at least $90,000 in bodily injuries. The other motorist's insurance covered $25,000. Allstate found that the policy's coverage was non-stacked, so the policy insured Ms. Stark for only $30,000. Allstate thus paid $5,000—that is, the difference between the single-car limit and what the other motorist's insurance paid. *See* ECF No. 17, at 5, ¶¶ 14-16.

Ms. Stark asserted that she could stack coverage with the other two vehicles on the policy. So she sued Allstate in state court for a declaration that she is owed the remaining $60,000. Invoking jurisdiction under 28 U.S.C. § 1332(a) and § 1441, Allstate removed the case to this

---

[3] Allstate does not dispute that Ms. Stark resided with her mother, Ms. Tafoya. *See* ECF No. 21, at 6, ¶ 12. The policy includes "any resident relative" within the definition of an "insured person." Compl. Ex. A, at 18 (ECF No. 1-1, at 28). Because Allstate does not challenge Ms. Stark's contention that the policy's coverage extended to Ms. Stark, the Court accepts that Ms. Stark was an insured party. *See generally* ECF No. 21.

Court.[4] *See* Notice of Removal 1-2 (ECF No. 1); ECF No. 17, at 5, ¶¶ 14-16; ECF No. 21, at 6, ¶¶ 14-16.

## II.   **Applicable Standards and Law**

Federal law governs the standards for granting summary judgment. *See Kan. Penn Gaming, LLC v. HV Props. of Kan., LLC*, 662 F.3d 1275, 2184 (10th Cir. 2011). Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248-50. And an issue is genuine if the evidence might lead a reasonable jury to return a verdict for the nonmovant. *See Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013).

Allstate and Ms. Stark agree on the material facts. They only disagree on whether Ms. Stark is legally entitled to the additional $60,000 in underinsured motorist benefits. As a result, summary judgment is appropriate. *See Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007).

Because this case invokes the Court's diversity jurisdiction, the substantive law of New Mexico controls the legal issues. *See Stickley v. State Farm Mut. Auto. Ins. Co.*, 505 F.3d 1070, 1076 (10th Cir. 2007). The Court's aim is to decide the case just as the Supreme Court of New Mexico. *See Butt v. Bank of Am.*, 477 F.3d 1171, 1179 (10th Cir. 2007). If no opinion from the Supreme Court of New Mexico commands the outcome, then the Court must predict how it would

---

[4] Ms. Stark's request for attorney's fees, together with her request for a declaration that she is entitled to $60,000 plus interest, satisfies the amount-in-controversy requirement for diversity jurisdiction. *See Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340-41 (10th Cir. 1998); *see also* NMSA 1978, § 39-2-1 (1977) (authorizing award for attorney's fees); *Salazar v. Geico Ins. Co.*, No. 10-cv-00118, 2010 WL 2292930, at *6-7 (D.N.M. Apr. 17, 2010).

rule. *See Jordan v. Maxim Healthcare Servs., Inc.*, 950 F.3d 724, 730-31 (10th Cir. 2020). To do so, the Court may consider persuasive state authority, such as the Supreme Court of New Mexico's dicta and precedential decisions by the New Mexico Court of Appeals. *See id.*

## III.   Discussion

New Mexico's UM/UIM statute requires insurers to offer UM/UIM coverage up to an insurance policy's liability limits. *See* NMSA 1978, § 66-5-301(A), (B) (1983). The statute gives an insured party "the right to reject uninsured motorist coverage." *Id.* § 66-5-301(C). But the statute is silent on how to reject this coverage.

The New Mexico Administrative Code details an insurer's obligations for obtaining a rejection of UM/UIM coverage. The statute's implementing regulation demands, "The rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." 3.12.3.9 NMAC.

New Mexico case law layers on a third set of requirements. In *Jordan v. Allstate Insurance Co.*, the Supreme Court of New Mexico listed what an insurer must do to obtain a valid rejection:

> (1) offer the insured UM/UIM coverage equal to his or her liability limits, (2) inform the insured about premium costs corresponding to the available levels of coverage, (3) obtain a written rejection of UM/UIM coverage equal to the liability limits, and (4) incorporate that rejection into the policy in a way that affords the insured a fair opportunity to reconsider the decision to reject.

2010-NMSC-051, ¶ 22, 245 P.3d 1214. If an insurer fails to satisfy these four *Jordan* requirements, then "the policy will be reformed to provide UM/UIM coverage equal to the liability limits." *Id.* And "where stacking is not otherwise lawfully precluded, UM/UIM coverages that have not been rejected can be stacked." *Ullman v. Safeway Ins. Co.*, 2017-NMCA-071, ¶ 15, 404 P.3d 434 (emphasis omitted), *cert. granted* 2017-NMCERT-008 (S-1-SC-36580).

6

The dispositive question here is whether Allstate properly incorporated Ms. Tafoya's rejection of stacked coverage into her policy.[5] Allstate asserts that "the Insured's decision to reject stacked UM coverage was fully incorporated in to the Policy by August 5, 2020." ECF No. 19, at 6; *accord* ECF No. 21, at 8. In particular, Allstate argues that Ms. Tafoya orally rejected non-stacked coverage on August 5, 2020, and that Allstate incorporated that oral rejection into the policy declarations that Allstate sent that day. Those policy declarations state that Ms. Tafoya selected non-stacked coverage. *See* Def.'s Ex. A, at 7 (ECF No. 21-1, at 12).[6]

For her part, Ms. Stark contends that Allstate did not incorporate Ms. Tafoya's rejection until September 14, 2020. In Ms. Stark's view, Allstate could not have incorporated the written rejection on August 5, 2020, because the written rejection did not exist for five more days. The statements in the August 5, 2020, policy do not count for incorporation—claims Ms. Stark— because they predated Ms. Tafoya's written rejection. Thus, according to Ms. Stark, the earliest

---

[5] Ms. Stark proposes an alternate and independent reason why she is entitled to judgment. According to Ms. Stark, New Mexico law requires the Court to impose stacked coverage— regardless of any anti-stacking provisions in the policy—because Allstate charged separate premiums for UM/UIM coverage on each of the three insured vehicles. *See* ECF No. 18, at 6 (citing *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, 92 P.3d 1255); ECF No. 17, at 11.

To avoid making any unnecessary pronouncements of New Mexico law, the Court addresses only one of the two dispositive issues. And the Court chooses to address the incorporation issue rather than the separate-premium issue because the latter is pending before the New Mexico Court of Appeals. *See, e.g.*, Plaintiff-Appellant's Brief in Chief at 28, *Cordova v. Allstate Ins. Co.*, No. A-1-CA-37921 (N.M. Ct. App. filed Aug. 13, 2020); Appellant's Brief in Chief at 6, *Garcia v. Allstate Fire & Cas. Ins. Co.*, No. A-1-CA-38005 (N.M. Ct. App. filed June 7, 2020).

[6] Allstate does not emphasize the selection form's text, which states that "the rejection, selection or modification of uninsured motorists insurance *is a part of your policy* and will be reflected on the policy declarations." *See* Def.'s Ex. 1-E, at 5 (ECF No. 15-1, at 35) (emphasis added). For example, Allstate does not argue that the language in the selection form automatically incorporated the form into the policy when Ms. Tafoya signed the form on August 10, 2020. Allstate has therefore forfeited any such argument. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

that Allstate could have incorporated the policy was when Allstate sent the policy declarations on September 14, 2020. *See* ECF No. 17, at 9-10; ECF No. 18, at 5-6.

In short, this case requires the Court to interpret *Jordan*'s fourth requirement. Can the insurer incorporate a prior oral rejection before receiving a written rejection? Or must the insurer incorporate a written rejection—thus requiring the incorporation to follow the written rejection? The Court concludes as follows: the Supreme Court of New Mexico would hold that an insurer can incorporate a rejection of UM/UIM coverage only after receiving a written rejection from the insurer.

### A.   Case Law Shows that a Written Rejection Must Precede Incorporation

An understanding that a written rejection must precede an incorporation echoes throughout New Mexico case law. This authority shows that an insurer cannot satisfy *Jordan*'s fourth requirement by receiving an oral rejection of coverage, incorporating that oral rejection into the policy declarations, and later obtaining a written rejection.

Cases before *Jordan* support the understanding that incorporation comes after written rejection. *Romero v. Dairyland Insurance Co.* interpreted the same regulation at issue here—the requirement that "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle . . . must by endorsed, attached, stamped or otherwise made a part of the policy . . . ." 1990-NMSC-111, ¶ 4, 803 P.2d 243 (quoting Reguls. of the N.M. Dep't of Ins., § 5-1-4 (codified at 3.12.3.9 NMAC)).

The *Romero* Court expanded on the regulation: "The rejection must be made a part of the policy by endorsement on the declarations sheet, *by attachment of the written rejection* to the policy, or by some other means . . . ." *Id.* ¶ 8 (emphasis added). This quotation shows that the

written rejection must precede incorporation—if not, the written rejection would not exist for the insurer to attach it to the policy.

*Marckstadt v. Lockheed Martin Corp.* evinced a similar understanding. 2010-NMSC-001, ¶ 26, 228 P.3d 462. To be sure, *Marckstadt* held that the insurer need not attach the written rejection itself to the policy—attaching some evidence of the rejection to the policy could satisfy the regulation. *See id.* But *Marckstadt* still was clear that a written rejection should precede incorporation:

> Obviously the insurer may attach the written rejection itself to the policy and be in compliance with the regulation. Alternatively, *once the insurer obtains a written rejection from the insured*, it may choose not to attach the written rejection itself to the policy. However, we reiterate our holding in *Romero* that 13.12.3.9 NMAC requires that some evidence of the insured's written rejection of UM/UIM coverage must be made part of the policy . . . .

*Id.* (emphasis added). *Marckstadt* thus understood that the insurer's attachment of the rejection (or attachment of evidence of the rejection) would follow the written rejection. What is more, the insurer must incorporate evidence of the *written* rejection—not just a prior oral rejection.

*Jordan* followed *Romero* and *Marckstadt*. Consider the plain language of *Jordan*'s requirements. The third requirement is that the insurer must "obtain a written rejection of UM/UIM coverage equal to the liability limits." 2010-NMSC-051, ¶ 22. The fourth requirement is that the insurer must "incorporate *that* rejection into the policy." *Id.* (emphasis added). The *Jordan* Court chose the pronoun "that" rather than "any." And the pronoun "that" refers to the written rejection that the third requirement prescribes. In other words, the rejection that the insurer must incorporate is the written rejection.

The *Jordan* Court, in explaining the relationship between the third and fourth requirements, held: "Once an insurer has obtained a written, objective manifestation of the insured's decision to reject, that rejection must be incorporated into the policy in a way that will 'clearly and

unambiguously call to the attention of the insured the fact that such coverage has been waived.'" *Jordan*, 2010-NMSC-051, ¶ 22 (quoting *Romero*, 1990-NMSC-111, ¶ 8, 803 P.2d 243). *Jordan* was unambiguous. Incorporation occurs once the insurer obtains the written rejection.

New Mexico courts have remained consistent after *Jordan*. *Sanchez v. Essentia Insurance Co.*, for example, considered whether an incorporation of a rejection came too long after the rejection. 2020-NMCA-009, ¶ 5, 456 P.3d 1108. The Court noted that the purpose of incorporation was to "provide the insured with a fair 'opportunity . . . to fully reconsider any rejection of UM[/UIM] coverage.'" *Id.* ¶ 12 (alterations in original) (quoting *Arias v. Phoenix Indem. Ins. Co.*, 2009-NMCA-100, ¶ 13, 216 P.3d 264). One can only reconsider a rejection after that rejection exists. And in New Mexico, the only valid rejections are written ones.

The *Sanchez* Court then opined, "An unreasonable delay between rejection and incorporation deprives the insured of that opportunity [to reconsider rejection]." *Id.* This statement—like the question presented in *Sanchez*—assumes that incorporation comes after rejection. The *Sanchez* Court continued, "It follows that an insured will be able to reconsider the initial decision in a meaningful way only if the insured receives the policy incorporating the rejection promptly *after deciding to reject* UM/UIM coverage." *Id.* ¶ 13 (emphasis added). Once again, *Sanchez* is clear incorporation follows rejection.

Allstate reads *Sanchez* differently. The takeaway from *Sanchez*, according to Allstate, is that "a delay [between rejection and incorporation] *may* render a rejection invalid, not that a delay *did* render a rejection invalid." ECF No. 19, at 7; *accord* ECF No. 21, at 9. Allstate continues, "The *Sanchez* court noted that the longer the length of time was between the rejection and incorporation into the policy, the more likely it was that the insured was not afforded the opportunity to knowingly and intelligently make the final decision about whether to reject

coverage." ECF No. 19, at 7; *accord* ECF No. 21, at 9. In short, Allstate uses *Sanchez* to assert that the fourth *Jordan* requirement is satisfied when "the insured has the opportunity to knowingly and intelligently ponder their rejection." ECF No. 19, at 7; *accord* ECF No. 21, at 9. And presumably Allstate finds this principle to hold here, where an incorporation precedes the insured's written rejection. As the Court discusses below, however, an insured party's knowing and intelligent rejection of UM/UIM coverage is not a sufficient condition for a valid rejection of UM/UIM coverage.

In any event, Allstate is incorrect about *Sanchez*'s relevance. *Sanchez* held that a seven-month delay between rejection and incorporation rendered a rejection invalid. 2020-NMCA-009, ¶ 15. Said otherwise, *Sanchez* established a maximum time between rejection and incorporation. But Ms. Stark does not contend that Ms. Tafoya's rejection was invalid because of an extended lag between Ms. Tafoya's rejection and Allstate's incorporation. *See* ECF No. 17, at 10-11 (waiving challenge to reasonableness of length of delay between rejection and incorporation). Rather, Ms. Stark contends that Ms. Tafoya's rejection was invalid because the car accident occurred between the written rejection and Allstate's incorporation. *Sanchez*—a case in which the incorporation preceded the car accident—therefore does not apply.

All in all, the case law is clear. To satisfy *Jordan*'s fourth requirement, an insurer must incorporate the insured's *written* rejection. And the insurer cannot incorporate the written rejection until *after* the insured makes the written rejection.

### B.     A Counterfactual Shows that No Valid Rejection Was Ready for Incorporation on August 5, 2020

A counterfactual shows why Allstate did not satisfy *Jordan*'s fourth requirement by sending Ms. Tafoya the policy declarations and selection form on August 5, 2020. What if Ms. Tafoya never signed the selection form? The selection form made the answer clear when it warned,

"Please note that if you fail to properly complete and return this document, you will be deemed to have selected Uninsured Motorists Insurance for Bodily Injury at limits equal to your Bodily Injury Liability limits and *those limits will be stacked*." Def.'s Ex. 1-E, at 1 (ECF No. 15-1, at 31) (emphasis added) (selection form); *see also* Def.'s Ex. 1, at 3, ¶ 17 (ECF No. 15-1, at 3) (declaration of Allstate agent) (noting that Ms. Tafoya was told that she needed to send the selection form). If Ms. Tafoya never completed and returned the selection form, then Ms. Tafoya's coverage would have included stacked coverage.

In fact, this counterfactual matches Ms. Tafoya's history with Allstate. In May 2020, Ms. Tafoya conveyed a desire for a new policy with non-stacked coverage. Allstate then sent Ms. Tafoya policy declarations for non-stacked coverage along with a selection form. But Ms. Tafoya failed to return the selection form, so her policy included stacked coverage in June 2020.

This counterfactual (like this history) shows that Ms. Tafoya's oral rejection of stacked coverage was not ripe for incorporation when Allstate sent Ms. Tafoya her policy declarations on August 5, 2020. In effect, Ms. Tafoya's oral rejection was not a legally binding rejection. She still needed to send her written rejection. Allstate could not have incorporated Ms. Tafoya's rejection on August 5, 2020, because no legally binding rejection existed at that time.

## C.   New Mexico Law Requires Strict Compliance with *Jordan* and 13.12.3.9 NMAC

Allstate emphasizes that Ms. Tafoya knowingly and intelligently rejected stacked coverage before her accident—and even before Allstate sent Ms. Tafoya the policy on August 5, 2020. *See, e.g.*, ECF No. 15, at 12-13. True enough. Ms. Tafoya called Allstate to ask why her premium increased in June. *See* Def.'s Ex. 1, at 3, ¶¶ 16-17 (ECF No. 15-1, at 3) (declaration of Allstate agent). After an Allstate agent explained that the increase stemmed from Ms. Tafoya's failure to return the selection form, Ms. Tafoya requested non-stacked coverage. *See id.* Allstate responded

12

by sending a policy that reflected Ms. Tafoya's oral request. *See* Def.'s Ex. A, at 7 (ECF No. 21-1, at 12) (policy that Allstate claims was effective on August 5, 2020) ("Regarding your Uninsured Motorists Insurance coverage, you have: selected *non-stacked* Uninsured Motorists Insurance . . . ."). Then, five days after Allstate sent Ms. Tafoya this policy, Ms. Tafoya returned the selection form. *See* Def.'s Ex. 1, at 3, ¶¶ 18-19 (ECF No. 15-1, at 3). Based on these facts, Ms. Tafoya's rejection of stacked coverage was knowing and intelligent.

But formalism trumps functionalism in New Mexico insurance law. *See Jordan*, 2010-NMSC-051 ("The provision of the maximum possible amount of UM/UIM coverage in every insurance policy is the default rule, and any exception to that rule must be '*construed strictly to protect the insured*.'" (emphasis added) (quoting *Romero*, 1990-NMSC-111, ¶ 6)). Indeed, a number of other cases have invalidated rejections of UM/UIM coverage for a lack of strict compliance with 13.12.3.9 NMAC and *Jordan*.

In *Kaiser v. DeCarrera*, an insured party—Lawrence Kaiser—signed a form rejecting UM/UIM coverage. 1996-NMSC-050, ¶ 2 923 P.2d 588. After Mr. Kaiser signed the form, the insurer sent him a declarations page and insurance policy. *Id.* ¶ 3. Neither the declarations page nor the insurance policy noted the rejection of coverage. *Id.* The insurer later tried to send an amended declarations page and insurance policy stating the lack of UM/UIM coverage. *Id.* ¶ 4. But the amended documents were returned to the insurer, who did not resend the documents. *Id.*

The *Kaiser* Court reasoned,

[The regulation identical to 3.12.3.9 NMAC] recognizes the fact that people reconsider their insurance coverage and provides the insured with affirmative evidence of the extent of coverage for *future* reference. Neither Josie Romero in *Romero* nor Kaiser in this case had affirmative evidence of the extent of their coverage, in violation of [the regulation].

*Id.* ¶ 10. Because the amended documents incorporating the rejection never reached Mr. Kaiser, the court shoehorned UM/UIM coverage into the policy. *Id.* ¶ 17. And the court did so even though

13

"Kaiser fully understood that he was rejecting UM/UIM coverage and that he readily acknowledged that he directed [the insurer] to issue the policy without UM/UIM coverage." *Id.* ¶ 10.

Justice Gene E. Franchini dissented. In his view, invalidating the rejection of UM/UIM coverage went too far. Justice Franchini wrote,

> I do not believe the statutes and regulations were ever intended to be used by a plaintiff who knowingly and intelligently rejects UM/UIM coverage in the first instance and then reverses his position and makes a claim for that coverage when ten months later he is injured by an uninsured motorist.

*Id.* (Franchini, J., dissenting). This dissent spotlights that an insured party can benefit from an insurer's "technical error." *Id.*

So too, *Jordan* invalidated a rejection for lack of incorporation. *See* 2010-NMSC-051, ¶ 35. And it did so even though the insurer obtained a written rejection of UM/UIM coverage and expressly integrated the insured's application and declarations at the end of the policy. *Id.* According to the *Jordan* Court, the integration did not incorporate the rejection because the integration came in a short paragraph at the end of forty-nine pages. *Id.* If the Supreme Court of New Mexico is willing to distinguish between integration and incorporation, then it is instructing courts to closely guard the incorporation requirement. *See also Sanchez*, 2020-NMCA-009, ¶ 15 (invalidating rejection because incorporation came seven months after rejection, even though incorporation still preceded car accident); *Arias*, 2009-NMCA-100 ("[A] rejection of UM/UIM coverage is ineffective, *regardless of the parties' intent*, if it is not 'endorsed, attached, stamped or otherwise made a part of the policy.' . . . As such, [the insurer's] reliance on [the insured's] purported knowledge that she rejected coverage in the application process is unavailing." (emphasis added) (quoting *Kaiser*, 1996-NMSC-050, ¶¶ 8, 10, 14)).

Allstate's chosen authorities are not to the contrary. Allstate cites *Vigil v. Rio Grande Insurance of Santa Fe* for the proposition that a rejection was properly incorporated "because the declarations pages included the statements 'uninsured motorist covs rejected' and 'uninsured motorists coverages have been rejected.'" ECF No. 15, at 14 (citing 1997-NMCA-124, ¶ 3, 950 P.2d 297). Allstate analogizes these statements to very similar statements in the policy that it sent on August 5, 2020. But the statements were not sufficient for incorporation in *Vigil*. Allstate omitted that the insurer in *Vigil* mailed the insured a copy of the policy and declarations page *after* a signed rejection of UM/UIM coverage. *See* 1997-NMCA-124, ¶¶ 2-3. And this fact—an incorporation that followed a written rejection—distinguishes *Vigil*.

In addition, Allstate highlights two cases that validated rejections of stacked coverage. *See* ECF No. 15, at 10 (first citing *Allstate Fire & Casualy Ins. Co. v. Trissell*, No. 17-cv-00362, 2017 WL 6028515 (D.N.M. Dec. 5, 2017); and then citing *Livingston v. Safeway Ins. Co.*, 2017 WL 8723115 (D.N.M. Dec. 18, 2017)). In *Trissel*, the insured rejected stacked coverage by signing a selection form that was nearly identical to the one here. *See* 2017 WL 6028515, at *1. As here, the insured contended that the insurer did not incorporate the rejection. *See id.* at *2. The *Trissell* Court rejected that argument without much discussion. *See id.* at *4 ("[T]he choice not to stack was incorporated into the policy and disclosed.").

A deeper dive into *Trissell*'s record reveals that *Trissell* is not persuasive here. The insured rejected stacked coverage on April 9, 2015; policy declarations indicating a rejection of stacked coverage were dated October 16, 2015; and the accident occurred on January 30, 2016. *See* Allstate's Motion for Summary Judgment at 2, *Allstate Fire & Cas. Ins. Co. v. Trissell*, No. 17-cv-00365 (D.N.M. filed Sept. 18, 2017), ECF No. 5; Complaint Ex. B at 9-10, 13, *Trissell*, No. 17-cv-00365 (D.N.M. filed Mar. 22, 2017); Complaint Ex. C at 5, *Trissell*, No. 17-cv-00365

(D.N.M. filed Mar. 22, 2017). That case, therefore, complied with the necessary order of operations: written rejection then incorporation.

Nor does *Livingston* help Allstate. There, the insured had coverage since 2013 and rejected UM/UIM coverage. *See* 2017 WL 8723115, at *1-2. Because the insurer sent declarations pages and renewal certificates every six months, and the accident occurred in 2016, *Livingston* held that the insurer satisfied *Jordan*'s incorporation requirement. *See id.* at *3. Thus, *Livingston* stands for no more than an example of what Allstate could have done here.

Finally, Allstate warns of a perverse result that might follow from holding that an incorporation can only follow a written incorporation: "in any circumstance in which an insured purposefully selects a certain level of coverage, they would be held to have purchased more coverage than they selected by virtue of ending up in an accident before the policy with their selections was mailed to them." ECF No. 21, at 7. That may be so. But it is not the Court's job to weigh the consequences of following New Mexico law. The Court's role is to faithfully follow New Mexico law, which it does here.

## IV.   Conclusion

Even though Allstate might be correct that it "immediately incorporated the Insured's *verbal* rejection and sent her the amended Policy to carefully review her decision to reject stacked UM coverage," *see* ECF No. 21, at 9, Allstate is incorrect that an incorporation of an oral rejection was enough to satisfy *Jordan* and 13.12.3.9 NMAC. Allstate needed to wait to incorporate Ms. Tafoya's written rejection. And because Allstate waited until after the car accident, Ms. Tafoya—and thus Ms. Stark—had stacked coverage at the time of the accident.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that

1. *Allstate's Motion for Summary Judgment and Memorandum in Support Thereof* (**ECF No. 15**) is **DENIED**.

2. Plaintiff April Stark's *Motion for Summary Judgment* (**ECF No. 16**), considered alongside *Memorandum in Support of Motion for Summary Judgment* (**ECF No. 17**), is **GRANTED IN PART**. As set out in the contemporaneously filed Declaratory Judgment,

   a. Plaintiff April Stark's underinsured motorist benefits are stackable because Allstate did not obtain a valid rejection of uninsured/underinsured motorist coverage before September 14, 2020; and

   b. Plaintiff April Stark is entitled to an additional $60,000.00 in underinsured motorist benefits from Defendant Allstate Fire and Casualty Insurance Company.

3. Plaintiff April Stark may serve and file a motion showing that she is entitled to prejudgment and post-judgment interest, attorney's fees, and the costs of this action. Plaintiff April Stark's brief is to be served and filed **within 21 calendar days of the entry of this Memorandum Opinion and Order.**

4. Defendant Allstate Fire and Casualty Insurance Company may serve and file a response to the motion submitted by Plaintiff April Stark **within 14 calendar days after service of the motion.**

5. Plaintiff April Stark may serve and file a reply to the response **within 14 calendar days after service of the response.**

   **IT IS FURTHER ORDERED** that if Plaintiff April Stark fails to submit a motion showing her entitlement to prejudgment and post-judgment interest, attorney's fees, and the costs

of this action **within 21 calendar days of the entry of this Memorandum Opinion and Order**,

then the Court may enter final judgment without further notice.

_____
SENIOR UNITED STATES DISTRICT JUDGE